People v Dalrymple (2024 NY Slip Op 50101(U))

[*1]

People v Dalrymple

2024 NY Slip Op 50101(U)

Decided on January 31, 2024

Supreme Court, Queens County

Miret, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 31, 2024
Supreme Court, Queens County

The People of the State of New York

against
Kelvin Dalrymple, Defendant.

Ind. No. 74067-2023

The People by:
Assistant District Attorney Dina Hodges, Esq.
Queens County District Attorney's Office
125-01 Queens Boulevard
Kew Gardens, New York 11415
The Defendant by:
Raymond Queliz, Esq.
Queens Defenders
118-21 Queens Blvd., Suite 212 
Forest Hills, New York 11375

Gary F. Miret, J.

The defendant, Kelvin Dalrymple, has submitted an omnibus motion, dated December 26, 2023, seeking: inspection and release of the grand jury minutes and dismissal or reduction of the indictment; a Bill of Particulars; an order controverting a search warrant; an order invalidating the People's certificate of compliance; an order dismissing the indictment pursuant to CPL § 30.30(1)(a); suppression of evidence; preclusion of evidence; Sandoval relief; Rosario/Consolazio material; and leave to file further motions. The People's response, dated January 16, 2024, consents to some of the relief sought and opposes other relief. The court decides the motion as follows.
INSPECTION AND DISMISSAL OR REDUCTION
Defendant's motion to inspect the grand jury minutes is granted. The minutes reveal that [*2]a quorum of the grand jurors was present during the presentation of evidence and at the time the prosecutor instructed the grand jurors on the law. The indictment substantially conforms to the requirements set forth in CPL § 200.50. The instructions were not defective as a matter of law and the proceedings were proper. Upon inspection of the grand jury minutes, this court found the evidence to be legally sufficient to support all counts of the indictment. Accordingly, the defendant's motion to dismiss or reduce the indictment is denied. 
Defendant takes exception to the prosecutor's lack of legal instructions to the grand jury in a number of areas and the introduction of hearsay testimony without appropriate instructions and argues the cumulative effect of these lapses affected the integrity of the proceeding before the grand jury.
First, the defendant alleges it was error when the prosecutor failed to provide the grand jury with curative instructions regarding the defendant's prior conviction for driving while under the influence and the defendant's refusal to submit to a blood sample. Here, the prosecutor properly instructed the grand jury as to the limited purpose of the defendant's prior conviction for operating a motor vehicle while under the influence. The prosecutor also properly advised the grand jury as to the weight and effect of the defendant's refusal to submit to a blood sample. Both instructions were provided to the grand jury at the close of evidence on the same day that evidence of the defendant's prior conviction was introduced and evidence of the defendant's refusal was elicited.[FN1]

Defendant also alleges that evidence of the seizure of defendant's blood sample pursuant to a search warrant and the results of OCME's analysis was inadmissible because of the delay in complying with the return and inventory provisions of CPL § 690.50(5). The defendant claims that the use of such evidence impaired the integrity of the grand jury is rejected. As discussed later in this decision, the delay in complying with the provisions of CPL § 690.50(5) does not undermine the validity of a search warrant and bar the use of evidence derived therefrom. (see People v Liepke, 184 AD3d 1109 [4th Dept 2020].)
The defendant's contends that the prosecutor impaired the integrity of the grand jury proceedings when she elicited hearsay evidence from Police Officer Sukhdeo and failed to properly instruct the grand jury as to how to consider such testimony - that it should not be considered for the truth of the matter asserted. (affirmation of defendant's attorney at 12) The grand jury testimony on which the defendant's contention is based follows:
Q: Officer Sukhdeo, did there come a time that you learned that blood was preserved by Jamaica Hospital when the defendant was taken there in connection with this incident?
A: Yes. (GJ tr at 18)
Police Officer Sukhdeo's testimony is not hearsay because it explains why he sought a search warrant to seize the defendant's blood sample. Although the prosecutor failed to inform the grand jury that his testimony was not being offered for the truth, but to explain Police Officer Sukhdeo's reason for seeking a search warrant and completing the narrative, there is no possibility of prejudice to the defendant by the prosecutor's failure so instruct the grand jury. The absence of a curative instruction was harmless.
Defendant also alleges it was error when the prosecutor failed to provide any curative instruction to the grand jury regarding hearsay statements contained on Police Officer Sukhdeo's body worn camera that was admitted into evidence as grand jury exhibit 1. (affirmation of defendant's attorney at 11) Most of the video footage from Police Officer Sukhdeo's body worn camera was relevant and probative of the defendant's lack of sobriety. The failure by the prosecutor to redact the relatively brief portions of the footage that consisted of hearsay or to instruct the grand jury to disregard that footage did not impair the integrity of the proceedings before the grand jury.
Impairment of the grand jury process and prejudice to the defendant, "does not turn on mere flaw, error or skewing. The statutory test is very precise and high." People v Darby, 75 NY2d 449 (1990), People v Thompson, 22 NY3d 687, 714 (standard for determining impairment of the grand jury process is "exacting") In, People v Huston 88 NY2d 400 (1996), the Court of Appeals held that dismissal of the indictment is limited to "those instances where prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the Grand Jury." Id. at 409. Importantly, the Court of Appeals also observed that "the submission of inadmissible evidence will be deemed fatal only when the remaining evidence is insufficient to sustain the indictment." Id. at 409. Thus, dismissal of an indictment is an exceptional and rare remedy. Huston, at 409. The individual and cumulative effect of the missing curative instruction and the inadmissible video footage did not reach that exacting level. Accordingly, the defendant motion to dismiss the indictment on these grounds is denied.
The defendant's motion to release the grand jury minutes is partially moot, because the People certified that they turned over the grand jury testimony in their certificate of compliance dated October 31, 2023. Otherwise, the defendant's motion is denied because release of the remainder of the grand jury minutes is not necessary to assist this court in determining the defendant's motion to reduce or dismiss the indictment.

 REQUEST FOR A BILL OF PARTICULARS
The defendant's motion for a bill of particulars is denied as moot, as the People have provided one with their omnibus response.

MOTION TO CONTROVERT
Following the defendant's arrest for driving while under the influence on March 13, 2023, the defendant was transported to Jamaica Hospital after complaining of shortness of breath. During defendant's treatment, blood was drawn. Sarah Mallak, a criminal law associate with the Queens District Attorney's Office, by letter dated March 15, 2023, wrote to Jamaica Hospital's Risk Management Department requesting that the blood sample taken from the defendant be preserved for subsequent use in the criminal prosecution. On April 11, 2023, Police Officer Sukhdeo, the police officer who arrested the defendant on March 13th, followed up with Daisey Mendez, an employee at Risk Management about obtaining the defendant's blood sample. Ms. Mendez told Police Officer Sukhdeo that the Pathology Department would contact the Queens District Attorney's Office when the sample was available. Sometime between July 6 and July 11, 2023, Ms. Mendez informed the Queens District Attorney's Office that the blood sample taken from the defendant when he was treated at the hospital was available for pick up. On July 11, 2023, the People applied for and received a search warrant to seize the defendant's blood sample [*3]that had been taken while he was treated at the hospital. Police Officer Sukhdeo, who executed the warrant, submitted the blood sample to the Office of the Chief Medical Examiner ("OCME") for testing. On or about September 29, 2023, the People received a report from OCME showing .14% ethanol for the defendant's blood sample. 
The defendant now moves to controvert the search warrant and suppress the blood evidence recovered on two grounds. First, he asserts a violation of the return and inventory provisions of CPL § 690.50(5) requires suppression of the blood evidence that was seized pursuant to the search warrant. It is undisputed that the search warrant return and inventory was not filed with the court until more than five months following the execution of the search warrant. Nevertheless, numerous courts have held the delayed compliance, even as long as five months (see People v Nelson, 144 AD2d 714, [3rd Dept 1988]), with the return and inventory provisions of CPL § 690.50(5) "does not undermine the validity of the search warrant or the search[.]" and courts have refused to apply the remedy of suppression to cure the violation. (see People v Liepke, 184 AD3d 1109 [4th Dept 2020]; People v Fernandez, 61 AD3d 891, [2nd Dept 2009]; People v Ellison, 4 Misc 3d, 319 [Monroe Cty 2004].) Accordingly, the defendant's motion to controvert the search warrant on this basis and suppress the blood evidence recovered pursuant to the search warrant is denied.
Relatedly, defendant argues that the search warrant to seize blood evidence on July 11, 2023, was not supported by probable cause because the affidavit in support of the search warrant sworn to by Police Officer Sukhdeo was based on stale information.[FN2]
Here, the search warrant application was based on information personally known to Police Officer Sukhdeo and information he received from Daisey Mendez, an employee of the Risk Management Department at Jamaica Hospital. In the warrant application dated July 11, 2023, Police Officer Sukhdeo stated on March 13, 2023 at approximately 1:20 a.m. he personally observed the defendant sleeping in a vehicle stopped in the middle of 112th Street with the engine running in Queens County. Police Officer Sukhdeo stated further he observed the defendant after he was removed from the vehicle. Police Officer Sukhdeo, unable to rouse the defendant, called the NYPD Emergence Service Unit to open the vehicle's door. Once outside the vehicle, Police Officer Sukhdeo smelled a strong odor of an alcohol beverage on defendant's breath, and observed that he had watery eyes and was unsteady on his feet, all indications that defendant was intoxicated. Based on these observations, Police Officer Sukhdeo concluded that defendant was intoxicated. Later, Police Officer Sukhdeo accompanied the defendant to Jamaica Hospital for treatment for shortness of breath. Police Officer Sukhdeo stated further that he was informed by Ms. Mendez that a blood sample taken from the defendant at Jamaica Hospital on March 13, 2023 is "currently being securely held by Jamaica Hospital." (Search Warrant Application 620/2023 at 3) This information in Police Officer Sukhdeo's affidavit submitted in support of the search warrant provided "the magistrate with information sufficient to support a reasonable belief that evidence of an illegal activity will be present at the specific time and place of the search." (see People v Edwards, 69 NY2d 814, 816 [1987].) Nevertheless, defendant contends that "there is nothing stating that the BAC (blood alcohol concentration) that was allegedly securely held will [*4]produce the BAC [. . .] when the defendant purportedly operated the motor vehicle while under the influence. (affirmation of defendant's attorney at 14) In this regard, the defendant mistakenly conflates the time the blood sample was taken with the information supplied by Ms. Mendez which clearly apprised the reviewing judge that the defendant's blood sample was being "currently [and] securely being held by Jamaica Hospital". Whether the analysis of the blood sample, held under the conditions and for the period it was held, is reliable and probative of the defendant's level of intoxication is a separate and distinct issue that does not affect the validity of the warrant.
In this case, defendant counted the number of days between the occurrence of events relied upon and the issuance of the search warrant rather than assessing the state of facts existing in the past that gave rise to probable cause to determine whether those facts continue to exist at the time of the search warrant application. (see People v Ventura, 217 AD3d 507, [1st Dept 2023].) Moreover, the determination of whether the proof meets this test must be determined by the circumstances of the case. (see People v Fernandez, 210 AD3d 693 [2nd Dept 2022] [quoting People v Padilla, 132 AD2d 578, 578, [2nd Dept 1987]; Town of East Hampton v Omabuild Usa No. 1, 215 AD2d 746 [2nd Dept 1995].) Considering all the relevant information, including the nature of the property to be seized, namely defendant's blood sample taken approximately within two hours after being arrested for driving while intoxicated,[FN3]
the reason that the blood sample was drawn and the location where it was stored, the information provided in the affidavit by Police Officer Sukhdeo and Ms. Mendez continued to exist and was not stale. Accordingly, defendant's motion to controvert the search warrant in its entirety is denied.

 CHALLENGE TO THE CERTIIFCATE OF COMPLIANCE
Article 245 of the Criminal Procedure Law, enacted in January 2020, expanded discovery in criminal cases. Prosecutors are now required to disclose "all items and information that relate to the subject matter of the case and are in the possession, custody or control of the prosecution or persons under the prosecution's direction and control" (CPL § 245.20[1]). In making such disclosures, "prosecutor shall make a diligent, good faith effort to ascertain the existence of material or information discoverable under [CPL § 245.20(1)] and to cause such material or information to be made available for discovery where it exists but is not within the prosecutor's possession, custody, or control; provided that the prosecutor shall not be required to obtain by subpoena duces tecum material or information which the defendant may thereby obtain." (CPL § 245.20[2].) In this regard, the statute provides that "all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution." (CPL § 245.20[2].) Once the People satisfy their discovery obligations, they must file a certificate of compliance that "shall state that after exercising due diligence and making reasonable inquires to ascertain the existence of material and information subject to discovery, the prosecutor has disclosed and made available all known material and information subject to discovery." (CPL 245.50[1].) In addition to this statement, the certificate must include a list of the discovery provided. (Id.)
The People's discovery obligations are ongoing. Should the prosecution learn of additional material or information that it would have been required to disclose pursuant to CPL § 245.20, "it shall expeditiously notify the other party and disclose the additional material and information as required for initial discovery under this article." (CPL § 245.60.) Moreover, if the People provide additional discovery in connection with their ongoing obligations outlined in CPL § 245.60, they must file a supplemental certificate "identifying the additional material and information provided." (CPL § 245.50[1].) Notably, the statute also specifies the "supplemental certificate of compliance shall detail the basis for the delayed disclosure so that a court may determine whether the delayed disclosure impacts the propriety of the certificate of compliance." (CPL §245.50[1-a].) At the same time, the statute also provides that "No adverse consequence to the prosecutor shall result from the filing of a certificate of compliance in good faith and reasonable under the circumstances; but the court may grant a remedy or sanction for a discovery violation as provided in section 245.80 of this article." (CPL 245.50[1].)

The Present Motion
The defendant is charged with two counts of Operating a Motor Vehicle While Under the Influence as a class E felony (VTL § 1192[2], [3]), and Driving While Ability Impaired (VTL § 1192 [1]).
The People filed a certificate of compliance, pursuant to CPL § 245.50[1], and a statement of readiness on October 31, 2023. On January 16, 2024, the People filed a supplemental certificate of compliance. The defendant now moves for a ruling deeming the People's certificate improper, arguing that the People failed to provide certain discoverable materials, and dismissal of the indictment pursuant to CPL §30.30. The People oppose the defendant's motion in its entirety.
In his motion, the defendant contends that the People's certificate of compliance was improper because they failed to provide the following documents: (1) a prisoner movement slip; (2) OCME reports prepared by OCME analyst Reinaldo Fonseca; (3) defendant's hospital records; and (4) the search warrant return.
The defendant also seeks the the production of Police Officer Sukhdeo's activity log/memo book for the date of July 11, 2023, for inspection by the defendant despite the People's representations that no entries exist in Police Officer Sukhdeo's memo book/activity log for that date nor did he wear a body worn camera on that date. 
The Prisoner Movement Slip
The People conceded that the prisoner movement slip was missing when the prosecutor filed the certificate of compliance on October 31, 2023. In the People's response papers, the prosecutor outlined in detail the numerous attempts made to obtain the prisoner movement slip. The prosecutor initially contacted Police Officer Sukhdeo on October 20th and October 25th and asked that he generate the prisoner movement slip. Police Officer Sukhdeo explained he was unable to generate the prisoner movement slip from his current command, the 90th Precinct where he had been transferred sometime after the defendant's arrest. The prosecutor then made numerous attempts to obtain the form from superior officers assigned to the defendant's precinct of arrest, the 102nd Precinct. On October 26th and 28th, the prosecutor left messages or spoke with the 102nd Precinct's Desk Sergeant and the Administrative Lieutenant. The prosecutor again [*5]contacted Police Officer Sukhdeo on October 28th and asked him to follow-up in generating the form. The prosecutor again called Police Officer Sukhdeo on October 30th and found he was unavailable for personal reasons for the following week. From November 9th through November 29th, the prosecutor attempted to contact Police Officer Sukhdeo and his superior officers no less than eight times. On December 6th the prosecutor again contacted Police Officer Sukhdeo; he told the prosecutor that despite his efforts he was unable to generate the prisoner movement slip but he would go to the 102nd Precinct in an effort to generate the form there. On December 14th the prosecutor met with Police Officer Sukhdeo and learned he was unable to generate the form at the 102nd Precinct; however, he told the prosecutor that he had given a copy of the form to Queens Central Booking where he brought the defendant following his arrest to be processed for arraignment. On December 27th the prosecutor contacted the Central Booking Sergeant who informed the prosecutor that Queens Central Booking did not keep a copy of the defendant's prisoner movement slip.
The court finds that the People's efforts with respect to the prisoner movement slip amounted to due diligence. The court accepts the People's good faith determination that this document is lost or destroyed, which is supported by the actions the prosecutor took to find the document, such as calling numerous relevant police officers and discussing the existence of the document with them and efforts to generate a duplicate original.
OCME Reports
Defendant alleges reports prepared by an analyst employed by the Office of the Chief Medical Examiner (hereinafter "OCME") were missing from the materials received from the People. The People explained that while they had not received the full litigation package from OCME despite repeated requests, they have provided the defendant with the reports thus far received from OCME related to the testing performed on the defendant's blood sample. The People have already complied with their obligation by providing all records relating to this case in their possession, which both the People's response papers and their extensive list of all items they have turned over demonstrate.
OCME is a non-law enforcement city agency "independent of and not subject to the control of the office of the prosecutor" (see People v Washington, 86 NY2d 189, 192 [1995]; People v Lustig, 68 Misc 3d 234, 245-246 [Sup Ct Queens County 2020].) "material possessed by OCME is, therefore, not in the control of the district attorney and not subject to automatic discovery if not received by the district attorney" People v Lewis, 78 Misc 3d 877 [Sup Ct Kings County 2023] citing CPL § 245.20[1]; People v Perez, 73 Misc 3d 171, 185-186 [up Ct Queens County 2021].) The People have disclosed the OCME materials in their possession to the defendant. In doing so, they have satisfied their discovery obligations in this regard.
Jamaica Hospital Medical Records
The defendant complains of delayed disclosure of defendant's own medical records maintained by Jamaica Hospital that were not in the actual possession, custody or control of the district attorney when the People's certificate of compliance was filed. (affirmation of defendant's attorney ¶ 35) As a result, the defendant's medical records were not required discovery material pursuant to CPL § 245.20[2], and could have been obtained by defendant. As [*6]the statute sets forth, "the prosecutor shall not be required to obtain by subpoena duces tecum material or information which the defendant may thereby obtain." (Id.) When the People obtained these materials, they immediately disclosed them to the defendant. (see affirmation of prosecutor at 14) Accordingly, the People acted in good faith in complying with their discovery obligations.
Return for Search Warrant 620-23
The return for search warrant 620-23 was created by Police Officer Sukhdeo on December 14, 2023. He then filed the return with the court. That same day, the prosecutor disclosed a copy of the search warrant return to the defendant. The court finds that once the return was created and after it was filed with the court, it was disclosed to the defendant that same day.
Production of Police Officer Sukhdeo's memo book/Activity log
The defendant demands the People produce Police Officer Sukhdeo's memo book/activity log for July 11, 2023, the date he executed the search warrant at Jamaica Hospital. The prosecutor has affirmed that that Police Officer Sukhdeo did not make any entries in his memo book/activity log nor did he wear his body worn camera when he executed the search warrant at Jamaica Hospital on July 11, 2023. The court declines to order the People to produce Police Officer Sukhdeo's memo book/activity log for July 11, 2023.
Accordingly, the defendant's motion to invalidate the People's certificate of compliance is denied in its entirety.

 DISMISSAL PURSUANT TO CPL § 30.30
When the defendant is accused of one or more offenses, at least one of which is a felony, the People must be ready for trial within six months of the commencement of the criminal action. (see CPL § 30.30[1][a]), minus any excludable periods, (see CPL § 30.30[4]; People v Cortes, 80 NY2d 201, 208 [1992]). Here, where the criminal action commenced on March 13, 2023, the applicable six-month period is 184 days. In this case, where periods of both pre-readiness and post-readiness delay are at issue, the determination of whether the People have satisfied their statutory speedy trial obligation "is generally determined by computing the time elapsed between the filing of the first accusatory instrument and the People's declaration of readiness, subtracting any periods of delay that are excludable under the terms of the statute and then adding to the result any post-readiness periods of delay that are actually attributable to the People and are ineligible for exclusion" Cortes, 80 NY2d at 208.
Following the defendant's March 13, 2023, arraignment on a felony complaint, the criminal action proceeded until the People filed their certificate of compliance and statement of readiness on October 31, 2023, following the return of the indictment by the grand jury on October 20, 2023. During this period, defendant's attorney waived CPL § 30.30 time from July 27 to September 18, 2023, a total of 54 days which are excluded from time chargeable to the People. Accordingly, only 178 days are chargeable to the People as they concede. (see [*7]affirmation of prosecutor at 17-18)[FN4]

Thereafter, on November 21, 2023, the defendant was arraigned on this indictment. The defendant requested a motion schedule to file his omnibus motion that also sought an order invalidating the People's certificate of compliance and statement of readiness. The case was adjourned to February 26, 2024, for decision on the defendant's motion.
In this case, the defendant's CPL § 30.30 motion relies on the premise that certain periods are chargeable to the People because their certificate of compliance was improper. Because the court, as explained above, has found the People's certificate of compliance proper and only 178 chargeable days have elapsed, the defendant's CPL § 30.30 motion must be denied.
Accordingly, since only 178 chargeable days have elapsed, the defendant's motion to dismiss is denied.

 MOTIONS TO SUPPRESS
The defendant's motion to suppress his statements to police officers is granted to the extent that a Huntley hearing is ordered to determine whether the defendant's statements were made in violation of his Miranda rights and whether the statements were involuntarily made within the meaning of CPL§60.45(2)(b).
The defendant's motion for a Dunaway hearing is denied, because he has not set forth any factual allegations that demonstrate that his detention and arrest were illegal. To obtain a Dunaway hearing, a defendant must allege a sufficient factual basis to demonstrate that there is some material factual dispute that requires resolution by such a hearing. (see People v Mendoza, 82 NY2d 415, 426 [1993].) Here, the defendant has not provided any such basis.
Although the defendant did not request a hearing regarding his refusal to submit to a blood test, in the interest of judicial economy, the court orders a refusal hearing. (see People v Cruz, 134 Misc 2d 115 [Crim Ct, New York County 1986].) At the hearing, the court will determine whether the police officer had reasonable grounds to believe the defendant had been operating a motor vehicle while intoxicated and whether the request to submit to such test was made within two hours of the arrest (Vehicle and Traffic Law § 1194[2][a][1]); whether the defendant was given sufficient warning, in clear and unequivocal language of the effect of such refusal (Vehicle and Traffic Law § [2][b][1],[f]; and whether the defendant's refusal to take the test was persistent (Vehicle and Traffic Law § 1194 [2][b][1],[f]).)

PRECLUSION OF EVIDENCE
The People failed to address the defendant's motion to preclude any unnoticed statement or identification evidence. Accordingly, the defendant's motion to preclude unnoticed statement and identification evidence is granted to the extent that the People are precluded from introducing at trial such evidence for which timely statutory notice was required but not served. (CPL § 710.30[3]; People v Grajales, 8 NY3d 861, 862 [2007]; People v Nolasco, 70 AD3d 972, 973 [2d Dept.2020]). The determination as to whether a statement was properly noticed is left to the sound discretion of the hearing or trial judge.

SANDOVAL RELIEF
The defendant's motion for Sandoval relief is referred to the trial court. The People are reminded of their obligation to disclose any material they intend to rely upon in their Sandoval application in accordance with the timeline set forth in Article 245 of the Criminal Procedure Law. 

 DEMAND FOR ROSARIO/CONSOLAZIO, BRADY/GIGLIO MATERIALS
In his motion, the defendant has moved for a number of orders relating to Rosario/Consolazio and Brady/Giglio materials. The People certified that they have satisfied their automatic discovery obligations pursuant to CPL § 245.20(1) in their certificate of compliance dated October 31, 2023 and supplemental certificate of compliance dated January 16, 2024. The court declines to issue any discovery-related orders, which appear to be superfluous in this case, aside from the court's standing Brady order, which appears below. As to the demand for Rosario/Consolazio and Brady/Giglio materials, the People are remined of their ongoing discovery obligations.

 ORDER TO COUNSEL
This court issues this order as both a reminder and a directive that counsel uphold their constitutional, statutory and ethical responsibilities in the above-captioned proceeding:
To the Prosecutor:
The District Attorney and the Assistant responsible for the case, or, if the matter is not being prosecuted by the District Attorney, the prosecuting agency and its assigned representative, is directed to make timely disclosures of information favorable to the defense as required by Brady v Maryland, 373 US 83 (1963), Giglio v United States, 405 US 150 (1972), People v Geaslen, 54 NY2d 510 (1981), and their progeny under the United States and New York State constitutions, and pursuant to Criminal Procedure Law (CPL) article 245 and Rule 3.8(b) of the New York State Rules of Professional Conduct, as described hereafter.
• The District Attorney and the Assistant responsible for the case have a duty to learn of such favorable information that is known to others acting on the government's behalf in the case, including the police, and should therefore confer with investigative and prosecutorial personnel who acted in this case and review their and their agencies' files directly related to the prosecution or investigation of this case.
• Favorable information could include, but is not limited to:
a) Information that impeaches the credibility of a testifying prosecution witness, including (i) benefits, promises, rewards or inducements, express or tacit, made to a witness by a law enforcement official or law enforcement victim services agency in connection with giving testimony or cooperating in the case; (ii) a witness's prior inconsistent statements, written or oral; (iii) a witness's prior convictions and uncharged criminal conduct; (iv) information that tends to show that a witness has a motive to lie to inculpate the defendant, or a bias against the defendant or in favor of the complainant or the prosecution; and (v) information that tends to show impairment of a witness's ability to perceive, recall, or recount relevant events, including impairment of that ability resulting from mental or physical illness or substance abuse.
b) Information that tends to exculpate, reduce the degree of an offense, or support a [*8]potential defense to a charged offense.
c) Information that tends to mitigate the degree of the defendant's culpability as to a charged offense, or to mitigate punishment.
d) Information that tends to undermine evidence of the defendant's identity as a perpetrator of a charged crime, such as a non-identification of the defendant by a witness to a charged crime or an identification or other evidence implicating another person in a manner that tends to cast doubt on the defendant's guilt.
e) Information that could affect in the defendant's favor the ultimate decision on a suppression motion.
• Favorable information shall be disclosed whether or not it is recorded in tangible form, and irrespective of whether the prosecutor credits the information.
• Favorable information must be timely disclosed in accordance with the United States and New York State constitutional standards, and in accordance with the timing provisions of CPL article 245. The prosecutor is reminded that the obligation to disclose is a continuing one. Prosecutors should strive to determine if favorable information exists. The prosecutor shall disclose the information expeditiously upon its receipt and shall not delay disclosure if it is obtained earlier than the time period for disclosure in CPL 245.10(1).
• A protective order may be issued for good cause pursuant to CPL 245.70 with respect to disclosures required under this order.
• Failures to provide disclosure in accordance with CPL Article 245 are subject to the available remedies and sanctions for nondisclosures pursuant to CPL 245.80.
• Only willful and deliberate conduct will constitute a violation of this order or be eligible to result in personal sanctions against a prosecutor.
To Defense Counsel:
Defense counsel, having filed a notice of appearance in the above captioned case, is obligated under both the New York State and the United States Constitution to provide effective representation of defendant. Although the following list is not meant to be exhaustive, counsel shall remain cognizant of the obligation to:
a) Confer with the client about the case and keep the client informed about all significant developments in the case;
b) Timely communicate to the client any and all guilty plea offers, and provide reasonable advice about the advantages and disadvantages of such guilty plea offers and about the potential sentencing ranges that would apply in the case;
c) When applicable based upon the client's immigration status, ensure that the client receives competent advice regarding the immigration consequences in the case as required under Padilla v Kentucky, 559 US 356 (2010);
d) Perform a reasonable investigation of both the facts and the law pertinent to the case (including as applicable, e.g., visiting the scene, interviewing witnesses, subpoenaing pertinent materials, consulting experts, inspecting exhibits, reviewing all discovery materials obtained from the prosecution, researching legal issues, etc.), or, if appropriate, make a reasonable professional judgment not to investigate a particular matter;
e) Comply with the requirements of the New York State Rules of Professional Conduct regarding conflicts of interest, and when appropriate, timely notify the court of a possible conflict so that an inquiry may be undertaken or a ruling made;
f) Possess or acquire a reasonable knowledge and familiarity with criminal substantive, procedural and evidentiary law to ensure constitutionally effective representation in the case; and
g) When the statutory requirements necessary to trigger required notice from the defense are met (e.g., a demand, intent to introduce particular evidence, etc.), comply with the statutory notice obligations for the defense as specified in CPL 250.10, 250.20, and 250.30.

 LEAVE TO FILE FURTHER MOTIONS
The branch of the motion requesting leave to file additional motions is granted to the extent recognized by CPL § 255.20(3).
This constitutes the decision and order of the court.
The Clerk of the court is directed to distribute copies of this decision and order to the attorney for the defendant and to the District Attorney.
January 31, 2024
_____________________
GARY F. MIRET, A.J.S.C.

Footnotes

Footnote 1:The defendant did not testify before the grand jury , thus there was no evidence presented to the grand jury by the defendant as to an innocent explanation for his refusal to submit to the taking of a blood sample. Curiously, the defendant did not move for a refusal hearing.

Footnote 2:The prosecutor, in a rather puzzling response, argued that the only basis to controvert a search warrant is when the veracity of the affiant is challenged. Here, the defendant never made that argument. There are many reasons to controvert a search warrant. Staleness is only one example.

Footnote 3:Grand jury exhibit 1 depicts the defendant at Jamaica Hospital and the time is visible when he is being attended to following his refusal for his blood to be drawn at the request of the police officer.

Footnote 4:Both the prosecutor and defendant's attorney agree that 54 days are excluded from the speedy trial calculation because the defendant waived CPL § 30.30 time from July 27 to September 18, 2023.